IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GWENDOLYN GRAY,<br><br>        *Plaintiff*,<br><br>  v.<br><br>VILLAGE OF HAZEL CREST,<br><br>        *Defendant.* | Case No.:<br><br><br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

NOW COMES the Plaintiff, GWENDOLYN GRAY ("Ms. Gray" or "Plaintiff"), by her attorneys and for her complaint against the Defendant VILLAGE OF HAZEL CREST ("VHC," the "Village," or "Defendant") states as follows:

## **NATURE OF THE ACTION**

1. Plaintiff Gwendolyn Gray brings this action against her former employer Village of Hazel Crest for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*; and the Illinois Human Rights Act, 775 ILCS 5/2 *et seq.* ("IHRA"). Plaintiff also seeks relief under the Illinois Whistleblower Act, 740 ILCS 174/1, *et seq.* and under Illinois common law retaliatory discharge.

2. Defendant's highest-ranking employee, Village Manager Christopher Williams, subjected Ms. Gray to sexual harassment and a sexually hostile work environment. As a result of reporting sexual harassment, Plaintiff was subjected to retaliation, including VHC taking away

her duties, scrutinizing her work, adverse terms and conditions of employment, and ultimately terminating her employment and denying her severance pay.

## PARTIES

3. Plaintiff is a citizen of Illinois and was employed by Defendant in Illinois.

4. During the time of the alleged incidents, Ms. Gray was Director of Human Resources for Defendant at its office located at 3000 West 170th Place, Hazel Crest, Illinois 60429.

5. At all times pertinent to this action, Ms. Gray was an employee of Defendant within the meaning of Title VII and the IHRA.

6. Defendant is a municipal corporation, organized under the laws of the State of Illinois.

7. During the relevant time period, Defendant employed more than 15 employees.

8. Defendant was Plaintiff's employer within the meaning of Title VII and the IHRA.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court is conferred and invoked pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f).

10. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and all the events and omissions giving rise to Plaintiff's claims occurred within this District.

**ADMINISTRATIVE PROCEDURE**

12. Plaintiff has exhausted all mandatory pre-complaint procedures required by law by timely filing administrative complaints with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR").

13. Plaintiff filed charge number 440-2020-00342 on October 11, 2019. Plaintiff received a Notice of Right to Sue from the EEOC on or after August 31, 2021. A copy of the EEOC Charge is attached hereto as Exhibit 1 and a copy of the EEOC Dismissal is attached as Exhibit 2.

14. Plaintiff timely filed this complaint against Defendant within 90 days of her receipt of the EEOC Notice of Right to Sue.

15. Plaintiff timely requested that IDHR adopt the findings of the EEOC on November 24, 2021.

16. All conditions precedent to the institution of this lawsuit have been fulfilled.

**FACTS UPON WHICH CLAIMS ARE BASED**

17. Defendant VHC is a village in Cook County. VHC is governed by a Board of Trustees that has delegated decision-making and supervisory authority to its Village Manager over subordinate employees.

18. On or around November 10, 2015, VHC hired Ms. Gray as a Human Resources Coordinator and promoted her about a month later to Director of Human Resources.

19. Throughout her employment, Ms. Gray satisfactorily performed her job duties.

20. In or around April of 2018, Defendant hired a new Village Manager, Christopher Williams. Ms. Gray began reporting directly to Mr. Williams.

21. From the beginning of his employment, Village Manager Williams regularly engaged in a pattern of offensive and unwelcome acts of sexual harassment and unwanted sexual advances against Ms. Gray, including to but not limited to the following:

   a. Mr. Williams regularly openly ogled Ms. Gray up and down.

   b. He subjected Ms. Gray to sexually harassing comments about her appearance, such as "you look good" in a leering manner.

   c. He subjected Ms. Gray to offensive lewd gestures. For example, when Mr. Williams walked by her office, he often made vulgar gestures, like making motions with his hand while sticking his tongue out in a sexual manner, suggesting oral sex. Additionally, he would approach her office window and begin moving his hips in a gyrating motion and pressing his penis against the window to her office.

   d. He subjected Ms. Gray to physical touching, including grabbing her buttocks on a number of occasions. On or around April 11, 2018, he grabbed Ms. Gray's buttocks after a meeting and mockingly and sarcastically stated: "don't report me to HR."

22. Ms. Gray rejected the sexual advances made towards her by Mr. Williams and told him to stop. Mr. Williams refused to stop and instead laughed and continued to sexually harass her.

23. The sexually harassing comments and conduct towards Ms. Gray were offensive, uninvited, and unwelcome.

24. Village Manager Williams subjected Ms. Gray to sexual harassment at least two to three times a week.

25. Due to the ongoing harassment, Ms. Gray suffered severe emotional and mental distress as a direct and proximate result of Defendant's conduct. In fact, her hair began to fall out.

26. In or around June of 2018, after Williams refused to stop sexually harassing her, Ms. Gray complained to the Village President Vernard Alsberry, Jr. about Mr. Williams's ongoing offensive sexual harassment. President Alsberry was Mr. Williams's supervisor.

27. Because Ms. Gray rejected his advances and then reported him, Village Manager Williams began to retaliate against her, including but not limited to, taking away her duties, scrutinizing her work, excluding her from meetings, undermining her authority, and yelling at her for no reason.

28. After Ms. Gray complained to Mr. Alsberry, Mr. Williams's demeanor towards her became negative and menacing. On numerous occasions, Mr. Williams walked by Ms. Gray's office and flipped her off with his middle finger through the office window.

29. Ms. Gray continued to report Mr. Williams to Mr. Alsberry, but nothing was done by Defendant and the sexual harassment and retaliation by Mr. Williams continued.

30. Ms. Gray shared with Mr. Alsberry how she was losing her hair due to the harassment and retaliation by Mr. Williams, and he mocked her by saying "Good morning, baldheaded," or words to that effect, as an offensive form of greeting.

31. On or around June 28, 2018, Ms. Gray was summoned to a meeting with Mr. Alsberry and the Village Attorney John Murphey, along with the harasser Mr. Williams, about her complaints. During this meeting, Mr. Williams falsely denied the allegations against him. Mr. Alsberry told Ms. Gray that no one witnessed Mr. Williams grabbing her buttocks and warned her that her allegations could ruin Mr. Williams's life.

32. During the meeting, Mr. Alsberry told Ms. Gray that some employees did report that they heard Ms. Gray telling Mr. Williams to stop and Mr. Williams apologizing.

33. Defendant took no action against Mr. Williams to discipline him or to prevent further harassment and retaliation.

34. As a result of Village Manager Williams's harassment and retaliation and VHC's tolerance of his unlawful conduct and failure to take action, Ms. Gray's physical and mental health suffered, and she was forced to take leave for a week.

35. In or around October of 2018, Ms. Gray was asked to create an anonymous survey for employees to rate Mr. Williams and Assistant Village Manager Dante Sawyer's performance.

36. Based on the negative responses from others regarding Mr. Williams's performance (and not Ms. Gray's complaints of harassment), Defendant decided to end Mr. Williams's employment but allowed him to resign and receive a severance.

37. Mr. Williams was also afforded an opportunity to appeal and address Defendant's Board of Trustees regarding Defendant's decision to end his employment.

38. On or around December 16, 2018, Mr. Sawyer became Acting Village Manager and as such, became Ms. Gray's direct supervisor.

39. Mr. Sawyer and Mr. Williams were close personal friends.

40. Defendant was aware of the friendship between Sawyer and Williams yet took no action to prevent Sawyer from retaliating against Ms. Gray for complaining about Mr. Williams's sexual harassment.

41. Immediately upon his appointment to Acting Village Manager, Mr. Sawyer told Ms. Gray that if he was permanently appointed as Village Manager, he was going to push Ms. Gray out for getting his best friend fired.

6

42. Approximately three days after Mr. Sawyer assumed the Acting Village Manager position, he began issuing unfounded and retaliatory write-ups against Ms. Gray.

43. Prior her complaints of sexual harassment, Ms. Gray had never been written-up or had any disciplinary action issued against her.

44. Mr. Sawyer subjected Ms. Gray to undue scrutiny in retaliation for her complaints of sexual harassment.

45. Ms. Gray complained about Mr. Sawyer's retaliation to Mr. Alsberry and told him that she believed that he was retaliating against her due to her reporting Mr. Williams.

46. Ms. Gray also complained to Mr. Sawyer that she felt she was being retaliated against due to her complaints about Mr. Williams.

47. VHC took no action to address Ms. Gray's complaints.

48. From approximately December 2017 to early 2019, Ms. Gray handled all Illinois Municipal Retirement Fund ("IMRF") document processing and signed all documentation related to this on behalf of VHC; however, she was not the Authorized Agent as set forth in and required by the Illinois Pension Code, 40 ILCS 5/7-135.

49. Sometime in early 2019, Ms. Gray was contacted by the IMRF and instructed to petition the Village Board to appoint her as the official Authorized Agent so that the VHC's IMRF submissions would be in compliance with the law.

50. Ms. Gray believed and understood that if she was not appointed as the Authorized Agent, the IMRF documentations that she had signed the previous year could be voided, which jeopardized the retirement status and benefits of VHC employees.

51. Ms. Gray notified Mr. Sawyer about her need to be appointed as the Authorized Agent so the IMRF could validate the employee retirement documents she had previously signed and submitted to the IMRF.

52. Initially, Mr. Sawyer agreed to petition the Village Board to appoint Ms. Gray as the official Authorized agent.

53. Despite agreeing to petition the Village Board for Ms. Gray's appointment, Mr. Sawyer repeatedly removed the matter from the Board's agenda.

54. Ms. Gray was deeply concerned about the risk to VHC employees and approached Mr. Sawyer and asked why he was delaying her appointment. Mr. Sawyer failed and refused to respond to her urgent request.

55. Given her growing concerns about her need to be appointed to Authorized Agent and Mr. Sawyer's failure to take action, around April 2019, Ms. Gray complained to Village President Alsberry and explained the possible repercussions that the failure to comply with this requirement could have.

56. Mr. Alsberry said that he would speak to Mr. Sawyer.

57. In response to Ms. Gray going to Mr. Alsberry to report Mr. Sawyer's conduct and the dangers of not having her appointed as the Village's Authorized Agent, Mr. Sawyer gave her a disciplinary warning on April 5, 2019, specifically for voicing her concerns to Mr. Alsberry.

58. Ultimately, on August 21, 2019, VHC terminated Ms. Gray's employment for false and pretextual reasons and in retaliation for her protected activity.

59. On information and belief, VHC has a severance policy and Ms. Gray was denied severance in retaliation for her complaints.

8

60. Prior to and after her termination, Ms. Gray was not afforded a disciplinary/termination hearing from Defendant.

## **COUNT I – Title VII - Retaliation**

61. Plaintiff re-alleges and incorporates paragraphs 1 through 47 and 58 through 60 by reference as though fully set forth herein.

62. Plaintiff engaged in statutorily protected expression by reporting and opposing sexual harassment and retaliation by Defendant's agents.

63. After engaging in said protected activity, Plaintiff suffered adverse terms and conditions and employment actions including termination of her employment by Defendant.

64. Defendant's actions in intentionally retaliating against Plaintiff caused her severe emotional distress, humiliation, depression, anxiety, pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other compensatory and consequential damages.

65. Defendant retaliated against Plaintiff with malice and/or reckless indifference to her federally protected rights, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A. Enter a judgment in her favor against VHC for lost pay and benefits and all relief available under the law;

B. All wages and benefits Plaintiff would have received but for the unlawful employment acts, including pre-judgment interest as permitted by law;

C. Compensatory damages;

D. Punitive damages;

E. Attorney's fees and costs;

F. Post-judgment interest, and

y

G. Such other relief as this Court deems just and equitable.

## COUNT II – Illinois Human Rights Act - Retaliation

66. Plaintiff re-alleges and incorporates paragraphs 1 through 47 and 58 through 65 by reference as if re-pled herein in Count II.

67. Plaintiff engaged in statutorily protected expression by reporting and opposing sexual harassment and retaliation by Defendant's agents.

68. After engaging in said protected activity, Plaintiff suffered adverse terms and conditions and employment actions by Defendant.

69. Defendant's actions in intentionally retaliating against Plaintiff caused her severe emotional distress, humiliation, depression, anxiety, pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other compensatory and consequential damages.

70. Defendant retaliated against Plaintiff with malice and/or reckless indifference to her protected rights, warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for a judgment against Defendant as follows:

A. Enter a judgment in her favor against VHC for lost pay and benefits and all relief available under the law;

B. Compensatory damages;

C. Punitive damages;

D. Attorney's fees and costs; and

E. Such other relief as this Court deems just and equitable.

### COUNT III – Violation of the Illinois Whistleblower Act

71. Plaintiff re-alleges and incorporates paragraphs 48 through 60 by reference as if re-pled herein in Count III.

72. Under the Illinois Pension Code, 40 ILCS 5/7-135, all municipalities participating in the Illinois Municipal Retirement Fund must have an appointed Authorized Agent.

73. From 2017 to 2019, Defendant assigned Ms. Gray to carry out the duties of an IMRF Authorized Agent but failed to appoint her to the position of Authorized Agent as required by law.

74. In early 2019, after receiving notice from the IMRF regarding Defendant's noncompliance with the law, Ms. Gray complained several times to Mr. Sawyer and Mr. Alsberry that she needed to be appointed as the Authorized Agent because she believed in good faith, based on notice from the IMRF, that not doing so could jeopardize the retirement status and benefits of Village employees.

75. Based on her complaints, on April 5, 2019, Mr. Sawyer wrote her up for reporting the violation of the law to Mr. Alsberry and ultimately terminated her in August 2019 for pretextual reasons.

76. Such conduct was in violation of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq*.

77. Through Defendant's actions, in violation of the Illinois Whistleblower Act, Plaintiff has suffered damages including, but not limited to, stress, anxiety, loss of her job and income, loss of career opportunities, and humiliation.

**WHEREFORE**, Plaintiff prays for a judgment against Defendant as follows:

A. A declaration that Defendant violated the Illinois Whistleblower Act;

  B.  Reinstatement with the same seniority status that she would have had but for the violation;

  C.  An award for damages in the amount of Plaintiff's back pay, with interest;

  D.  Compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees; and

  E.  Granting all such other and further relief as this Court deems just and equitable.

### COUNT IV – Common Law Retaliatory Discharge

78. Plaintiff re-alleges and incorporates paragraphs 48 through 60 and 71 through 77 by reference as if re-pled herein in Count IV.

79. Plaintiff was involuntarily terminated by Defendant in retaliation for complaining about Defendant's violation of the Illinois Pension Code and Village Manager Sawyer's failure and refusal to take steps to bring Defendant into compliance with the law.

80. Defendant's discharge of Plaintiff violates a clearly mandated public policy.

81. As a proximate result of the unlawful discharge, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff prays for a judgment against Defendant as follows:

  A.  Compensatory, consequential, and punitive damages available under law; and

  B.  Granting all such other and further relief as this Court deems just and equitable.

Dated: November 29, 2021 	Respectfully submitted,

**GWENDOLYN GRAY**

By: 	/s/   Thalia Pacheco
    	One of Plaintiff's Attorneys

David Fish
Alenna Bolin
Thalia Pacheco
Fish Potter Bolaños, P.C.
200 E 5th Ave., Suite 123
Naperville, IL 60563
(312) 861-1800
Dfish@fishlafirm.com
abolin@fishlafirm.com
tpacheco@fishlafirm.com
docketing@fishlafirm.com